Filed 12/9/15  L.G. v. M.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| L.G., | D067027 |
| Respondent, | |
| v. | (Super. Ct. No. D551515) |
| M.M., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David B. Oberholtzer, Judge.  Reversed and remanded for further proceedings.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Law Office of Neale B. Gold and Neale Bachmann Gold for Appellant.

Yale & Baumgarten and David W. Baumgarten for Respondent.

M.M. (Mother) appeals a trial court order granting the petition of L.G. (Father) requiring her to return to Mexico with their two children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670 (the Hague Convention), as implemented by the International Child

Abduction Remedies Act (ICARA) (22 U.S.C.A. § 9001 et seq.).[1]  Mother contends the

trial court erred by finding there was a grave risk of harm to the children if they were

returned to Mexico in the custody of Father, but then granting Father's petition for a

return order subject to unauthorized and unenforceable conditions (e.g., requiring her to

return to Mexico with the children).  She argues the court should have denied Father's

petition based on its finding of a grave risk of harm to the children.  We conclude the trial

court erred by making its return to Mexico order subject to certain unauthorized and/or

unenforceable conditions and remand the matter for further proceedings as discussed

below.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Father and Mother were married.  They are both Mexican citizens.  Until

October 2013, they both resided in Tijuana, Mexico, while working at their family

hardware store in Chula Vista, California.

Father and Mother had two daughters, M., born August 2002, and Me., born May

2004, both born in the United States.  Their daughters have dual citizenship in Mexico

and the United States.  They resided and attended school in Tijuana.

Prior to and during April 2013, Father physically and verbally abused Mother.  In

July 2013, Father and Mother filed a voluntary divorce petition in Mexico that apparently

was not thereafter finalized.

---

[1]     ICARA was originally found at former title 42 United States Code section 11601 et seq.

2

On or about October 12, 2013, Mother, without Father's knowledge or consent, moved with their children from their home in Mexico to the United States, where they apparently have since been staying at domestic violence shelters in San Diego County. Mother thereafter refused to inform Father of the location of, or allow him to visit with, their children. In April 2014, Father filed a petition for divorce in the Tijuana family court.

On October 10, 2014, Father filed the instant Hague Convention petition seeking an order requiring the return of the children to Mexico so that custody and visitation rights could be adjudicated in the pending divorce action in Mexico. During a four-day trial, the trial court heard the testimony of nine witnesses, including Father, Mother, and the children's therapists. Mother testified regarding past incidents of physical and verbal abuse committed by Father against her, some of which were committed in the presence of one or both of their children. The court also spoke with both children in chambers.

On the record, the trial court stated its findings of fact and orders. The court found Father had committed substantial domestic violence against Mother. It found Father's denials of that domestic violence were not believable and concluded he "plainly lied to the Court about important things." Based on the evidence, the court concluded there would be a grave risk of emotional harm to the children were they returned to Mexico in Father's custody, but there would be no grave risk of harm were they otherwise returned to Mexico. To protect the children, it ordered they remain in Mother's custody, ordered her to seek a restraining order against Father from the Mexican court within 10 days, and ordered that Mother would, on her return to Mexico, have exclusive use of the family

3

home.  It further ordered that, on the issuance of a protective order from the Mexican court, Mother was to return to Tijuana with the children.  The court stated: "Let me be absolutely clear about that.  The children are going back to Mexico with the [M]other [¶] . . . [¶] [I]f Mother refuses to cross the border, I'll make further orders."

On November 13, 2014, the trial court issued its written order granting Father's petition (Order).  The Order states in part:

> "1.  The children's country of habitual residence is Mexico.
> [¶] . . . [¶]
>
> "4.  Mother's removal of the children from Mexico to the United States was wrongful under the Hague Convention, Article 2, and was an attempt by Mother to impose custody by *fait accompli* through crossing an international border.
>
> "5.  Consequently, this Court is bound by Hague Convention Article 12 and [former] 42 U.S.C. § 11601(a)(4) to order the return of the children to Mexico forthwith, unless there is a cognizable defense.
>
> "6.  Due to a history of domestic violence, the court finds by clear and convincing evidence there would be a grave risk of emotional harm to the children if they were returned immediately to the Father's custody.  [Citation.]
>
> "7.  Nevertheless, the Court finds no grave risk of emotional harm to the children if they are returned to Mexico.

The court then set forth its orders for the return of the children to Mexico, stating:

> "8.  Therefore, the court orders the return of the children to Mexico, the country of habitual residence, and the jurisdiction of the Tijuana, Baja, California, Family Court, which has a pending case involving custody of the children.
>
> "9.  Pursuant to [former] 42 U.S.C. § 11604(a), the court orders Mother to accompany the children in their return to Mexico.  This is a temporary order, pending a custody order from Tijuana, Baja California, Family Court.

4

"10. To further protect the children from a grave risk of emotional harm, the court further orders Mother to request a restraining order or other protective order for herself and the children from the Tijuana, Baja California, Family Court on or before November 16, 2014, to allow the children's safe return.

"11. Until such time as the Mother obtains a restraining order or other protective order from the Tijuana, Baja California, Family Court, and/or until such time as this order is superseded or cancelled by a Tijuana, Baja California Family Court order, [Father] shall never be intentionally or knowingly within 100 meters of [Mother] or the children, while in the U.S. or Mexico, except for purposes of attending court hearings or other events at which the attendance of one or both parents is required.

"12. Unless the Tijuana, Baja California Family Court orders otherwise, on or before November 16, 2014, Father shall vacate the [family] premises [in Tijuana] to allow the Mother and children to occupy the residence.

"13. Upon receiving the protective order the minor children shall immediately return to Tijuana, Mexico and to the family home . . . in the Mother's custody pending orders from the Tijuana, Baja California, Family Court or the parties agree to a different arrangement."

The court reserved jurisdiction in the event the Tijuana family court denied Mother's request for a protective order, subject to superseding or different orders by that court. The trial court denied Mother's request for a stay of the Order pending an appeal. Mother timely filed a notice of appeal challenging the Order. On December 18, 2014, we granted Mother's petition for writ of supersedeas and request for stay, and stayed the Order pending further order of this court.

5

DISCUSSION

I

*The Hague Convention Generally*

"The [Hague] Convention . . . was adopted in an effort 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.' [Citations.] To deter parents from crossing international boundaries to secure a more favorable forum for the adjudication of custody rights, the [Hague] Convention provides for the prompt return of a child who is 'wrongfully removed to or retained in' any country that has signed on to the [Hague] Convention. [Citations.] It thus provides a means by which to restore the status quo when one parent unilaterally removes the child from the child's country of habitual residence and/or retains the child in a new jurisdiction. [Citation.] [¶] The only function of a proceeding under the [Hague] Convention is to decide whether a child should be returned to the country of the complaining parent; it does not govern the merits of parental custody disputes, but leaves those issues to be determined by appropriate proceedings in the child's country of habitual residence." (*In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1210 (*Forrest*).)

A petitioner under the Hague Convention "bears the burden of proving the child's wrongful removal or retention by a preponderance of the evidence." (*Forrest*, *supra*, 144 Cal.App.4th at p. 1211.) "If the petitioner succeeds in showing a wrongful removal, the [Hague Convention] requires repatriation of the abducted child to its country of habitual

6

residence in all but a few exceptional circumstances. [Citations.] Exceptions to the Hague Convention must be narrowly interpreted 'lest they swallow the rule of return.' " (*Maurizio R. v. L.C.* (2011) 201 Cal.App.4th 616, 633 (*Maurizio R.*).)

The primary exception at issue in this appeal is the "grave risk" exception, which provides that return of a child to his or her country of habitual residence need not be ordered if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." (Hague Convention, art. 13, par. b; 22 U.S.C.A. § 9003(e)(2)(A).) The grave risk exception is narrow and must be proved by clear and convincing evidence. (22 U.S.C.A. § 9003(e)(2)(A); *Maurizio R.*, at p. 633; *In re Marriage of Witherspoon* (2007) 155 Cal.App.4th 963, 974 (*Witherspoon*).)

Another exception to return may apply when a child of sufficient age and degree of maturity objects to return. (Hague Convention, art. 13; *Witherspoon*, *supra*, 155 Cal.App.4th at p. 975.) The Hague Convention provides: "The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [his or her] views." (Hague Convention, art. 13; *Witherspoon*, at p. 975; *Escobar v. Flores* (2010) 183 Cal.App.4th 737, 746 (*Escobar*).) Elisa Perez-Vera, the official reporter for the Hague Convention, explained in her report that the Hague Convention provides that a child's views on his or her return may be conclusive if the child has attained an age and degree of maturity sufficient for his or her views to be taken into account by the court. (*Escobar*, at pp. 746-747 & fn. 4; *Witherspoon*, at pp. 972, fn.

7

7, & 975-976; *De Silva v. Pitts* (10th Cir. 2007) 481 F.3d 1279, 1286; *Blondin v. Dubois* (2d Cir. 2001) 238 F.3d 153, 166 ["[A] court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child."].) The Hague Convention does not set forth a minimum age at which a child is old enough and mature enough to trigger that provision. (*Blondin*, at p. 166.)

On appeal from an order granting or denying a Hague Convention petition, "we review the trial court's determination of the historical facts for substantial evidence but conduct a de novo review of the questions of law." (*Forrest*, *supra*, 144 Cal.App.4th at p. 1213.) We review independently a trial court's interpretation of the Hague Convention and its application of the Hague Convention to the facts in a particular case. (*Maurizio R.*, *supra*, 201 Cal.App.4th at pp. 633-634.)

II

*Unauthorized and Unenforceable Conditions of Return Order*

Mother contends the trial court erred as a matter of law by making the Order requiring the return of the children to Mexico subject to certain conditions that are unauthorized and/or unenforceable. She does not dispute the trial court's findings that the children's habitual residence was in Mexico and that she wrongfully removed them from Mexico to the United States. More importantly, she does not dispute the court's finding that there would be no grave risk of emotional harm to the children were they returned to Mexico, *unless* they are returned immediately to Father's custody (in which case there

8

would be a grave risk of emotional harm).[2]  Rather, Mother only challenges certain

conditions of the Order and requests that we reverse the order and remand the matter to

the trial court.

A

Mother asserts the trial court erred as a matter of law by requiring her to return to

Mexico with the children.  In the Order, the court ordered "Mother to accompany the

children in their return to Mexico."  In so doing, as in another case involving a similar

return order, the trial court "admirably attempted to balance the broad purposes of the

[Hague] Convention with the safety of the children by fashioning undertakings that

attempted to protect the children from their father during the pendency of custody

proceedings [in Mexico]."  (*Simcox v. Simcox* (6th Cir. 2007) 511 F.3d 594, 610

(*Simcox*).)  However, the Hague Convention requires the return of only children, and not

their parents, to the country of their habitual residence.  (*Maurizio R.*, *supra*, 201

---

[2]      Although Father's respondent's brief disputes the trial court's finding that there
would be a grave risk of emotional harm to the children were they returned immediately
to his custody, he has not filed a notice of cross-appeal and therefore cannot contest the
trial court's factual finding on that issue.  (*California State Employees' Assn. v. State
Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 ["[I]t is the general rule that a
respondent who has not appealed from the judgment may not urge error on appeal."].)
Accordingly, we need not address, and do not decide, whether there is substantial
evidence in the record on appeal to support the trial court's findings regarding the absence
or presence of a grave risk of harm to the children were they to be returned to Mexico in
the custody of Father or another person (e.g., Mother or court-appointed guardian).  (Cf.
*Forrest*, *supra*, 144 Cal.App.4th at p. 1213 [substantial evidence standard applies in
reviewing trial court's factual findings].)  In any event, were we to address that issue, it is
likely we would conclude there is substantial evidence in the record to support the trial
court's finding there would be a grave risk of emotional harm to the children were they
returned to Mexico immediately in Father's custody.

Cal.App.4th at p. 633; *Forrest*, *supra*, 144 Cal.App.4th at p. 1210.) A trial court has no authority under the Hague Convention or ICARA to order a parent to return to the children's country of habitual residence, whether with or without the children. (*Maurizio R.*, at p. 641 ["Mother cannot be compelled to return to Italy."]; *Simcox*, at p. 598 [reversing return order, finding particularly problematic the "command that Mrs. Simcox herself return to Mexico"].) By ordering Mother to return to Mexico with her children, the trial court erred. It lacked the authority under the Hague Convention and ICARA (or otherwise) to require her to return to Mexico. Father does not cite any authority showing, or otherwise persuade us, the trial court had that authority.

Furthermore, contrary to Father's assertion and the trial court's apparent belief, the court did not have the authority under the Hague Convention or ICARA to order Mother to return to Mexico with the children as a provisional remedy. (22 U.S.C.A. § 9004(a).) A court exercising jurisdiction under the Hague Convention and ICARA "may take . . . measures . . . to protect the well-being of the child . . . *before the final disposition* of the [Hague Convention] petition." (22 U.S.C.A. § 9004(a), italics added.) Accordingly, those provisional measures may be taken only during the pendency of a Hague Convention petition and not as part of a final order deciding the merits of that petition. Because the trial court's order that Mother return to Mexico with the children is part of the Order that finally disposes of Father's petition, it is *not* a provisional measure under ICARA.

Nevertheless, we note the trial court's objective of protecting the children from the grave risk of emotional harm by Father on their return to Mexico could have been carried

10

out in a differently constructed return order. (See, e.g., *Maurizio R.*, *supra*, 201 Cal.App.4th at pp. 641-642.) Mother "cannot be permitted to defeat the Hague Convention" by refusing to return to Mexico with the children. (*Id.* at p. 641.) Assuming on remand of this matter the trial court does not alter its conclusion the children must be returned to Mexico (i.e., based on the children's views as discussed below), the court should craft conditions and undertakings that do not *require* Mother's cooperation in their return to Mexico. (*Id.* at pp. 641-642.) For example, the court may give Mother the choice to return to Mexico with the children, but if she chooses not to do so, it may appoint a guardian, child welfare escort, or other responsible third party to escort the children back to Mexico for further custody proceedings there. (*Id.* at p. 641; cf. *Simcox*, *supra*, 511 F.3d at p. 610 ["[T]he court must provide for a contingency to assure the children's safety and care should Mrs. Simcox choose to remain in the United States."].) There is nothing in the record indicating the courts in Mexico are unable to issue orders to protect the children's physical and emotional health pending the outcome of the custody proceedings there. (*Maurizio R.*, at pp. 641-642 [regarding courts in Italy].) In the unlikely and rare circumstance that the trial court finds it impossible to craft conditions or undertakings that would protect the children from emotional harm by Father on their immediate return to Mexico, it may be necessary that it deny Father's petition. (Cf. *Simcox*, at pp. 610-611.)

B

Mother also asserts the trial court erred as a matter of law by conditioning the children's return to Mexico on Mother's application for, and the issuance of, a protective

11

order from the Tijuana family court. The Order states: "To further protect the children from a grave risk of emotional harm, the court further orders Mother to request a restraining order or other protective order for herself and the children from the Tijuana, Baja California, Family Court on or before November 16, 2014, to allow the children's safe return." The Order further stated: "Upon receiving the protective order the minor children shall immediately return to Tijuana, Mexico and to the family home . . . in the Mother's custody . . . ." The record shows that Mother apparently applied for such a protective order before the November 13, 2014, hearing on the terms of the Order, but it does not show whether such an order had been issued by that date or whether one has since been issued by the Tijuana family court.

"[C]onditioning a return order on a foreign court's entry of an order . . . raises serious comity concerns." (*Danaipour v. McLarey* (1st Cir. 2002) 286 F.3d 1, 23; *Maurizio R.*, *supra*, 201 Cal.App.4th at p. 644.) Nevertheless, we generally agree with the trial court's attempt to guide the parties in obtaining an order from the Tijuana family court to protect the children from the risk of emotional harm by Father. However, similar to our reasoning above that precludes the court from requiring Mother to return to Mexico with the children, the court also has no authority to *require* Mother to apply for a protective order from the Tijuana family court. Absent evidence in the record showing otherwise, we presume there may be alternative means by which a protective order may be obtained from a court in Mexico to protect the children in the event Mother does not voluntarily apply for, and obtain, such an order. Furthermore, absent a finding by the trial court that there would be a grave risk of emotional harm to the children by Father

12

were they returned to Mexico in the immediate custody of Mother, a guardian, a child welfare escort, or other responsible third party (other than Father), it should not have conditioned their return on the issuance of a protective order by the Tijuana family court. We cannot presume the courts in Mexico are unable to promptly issue orders to protect the children's emotional health pending the outcome of the custody proceedings there. (*Maurizio R.*, *supra*, 201 Cal.App.4th at pp. 641-642 [regarding courts in Italy].)

C

Mother also asserts the trial court erred by including in the Order conditions or undertakings that it could not enforce. For example, she cites the order that Father vacate the family home in Tijuana. She correctly argues the trial court could not enforce that order, nor is there anything in the record showing the Tijuana family court would enforce that order. By so ordering, the court erred. However, we disagree with Mother's assertion that the trial court must deny Father's petition if it cannot enforce that or other conditions. (Cf. *Danaipour v. McLarey*, *supra*, 286 F.3d at p. 25-26 [if grave risk or other exception applies, a court should not exercise its discretion to return the child unless enforcement of its undertakings can be guaranteed]; *Simcox*, *supra*, 511 F.3d at p. 606.) As a general rule, a court should only issue orders that it has the ability to enforce. Nevertheless, it should not be dissuaded from issuing appropriate orders if their enforcement is not "guaranteed."

D

Mother also asserts the trial court erred by ordering the return of the children to Mexico because Father did not carry his burden to present evidence showing the

13

conditions or undertakings ordered by the court would alleviate the risk of emotional harm to the children. Citing *Baran v. Beaty* (11th Cir. 2008) 526 F.3d 1340, she argues that because the trial court found there would be a grave risk of harm to the children were they returned to Mexico immediately in Father's custody, it was his burden to then present evidence that specific undertakings would alleviate that risk. (*Id*. at pp. 1349, 1352-1353.) She further argues that because Father did not propose any specific undertakings or present any evidence that the undertakings would alleviate the grave risk to the children were they to be in his immediate custody, the trial court should have denied his petition for their return under the Hague Convention. We disagree. Although it would be helpful for the petitioning parent to propose specific undertakings to the court and present evidence showing that those undertakings would alleviate any grave risk to the children on their return to the country of their habitual residence, we cannot conclude a court must deny a petition absent such proposed undertakings and evidence in support thereof. Rather, we believe it is incumbent on the trial court, with or without the assistance of either parent, to determine, based on the evidence before it, whether sufficient conditions or undertakings can be crafted that would avoid harm, or at least reduce it to a level less than a grave risk of harm, to the children were they to be returned to the country of their habitual residence. We conclude the trial court did not err by not denying Father's petition as asserted by Mother.

E

Mother also asserts the trial court erred by granting Father's petition and should have denied it simply because the court found there would be a grave risk of emotional

14

harm to the children were they returned to Mexico in the immediate custody of Father. However, the court also found there would be, in general, *no grave risk* of emotional harm to the children were they otherwise returned to Mexico (i.e., not in Father's immediate custody). Furthermore, the trial court presumably believed a return order subject to certain conditions and undertakings would be sufficient to protect the children from the risk of any emotional harm on their return to Mexico. Although there are errors in certain conditions and undertakings of the Order, as discussed above, we believe the court was correct that conditions and undertakings could be crafted that would be sufficient to protect the children from the risk of any emotional harm on their return to Mexico. On remand, absent another ground to deny the petition as discussed below, the court should attempt to craft appropriate conditions and undertakings that would alleviate that risk.

III

*Proceedings on Remand*

Mother requests that on remand of this matter we direct the trial court to enter a new order denying Father's petition. We decline to do so. Rather, on remand the court should instead first determine, as Mother alternatively suggests, whether either or both of the children are of sufficient age and degree of maturity and object to their return to Mexico.[3] (Hague Convention, art. 13; *Witherspoon*, *supra*, 155 Cal.App.4th at p. 975.)

---

[3] Although the trial court spoke with the children, the record does not show whether it considered the potential application of this exception to the Hague Convention's general rule requiring the return of children to the country of their habitual residence.

15

If so, the court *may*, in the reasonable exercise of its discretion, deny the petition for their return to Mexico. (Hague Convention, art. 13; *Witherspoon*, at p. 975; *Escobar*, *supra*, 183 Cal.App.4th at p. 746; *Blondin v. Dubois*, *supra*, 238 F.3d at p. 166 ["[A] court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child."].) The Hague Convention does not set forth a minimum age at which a child is old enough and mature enough to trigger that provision. (*Blondin*, at p. 166.) However, in other cases children as young as 13, 11, and eight years old have been found, in the circumstances of those cases, to be of sufficient age and degree of maturity to make it appropriate for the court to consider their views on their return to the country of their habitual residence. (See, e.g., *Witherspoon*, at p. 976 [13- and 11-year-old children]; *Escobar*, at pp. 740, 745, 752 [eight-year-old child]; *Blondin*, at p. 158 [eight-year-old child].)

If the trial court does not deny Father's petition on that ground (i.e., the children are of sufficient age and degree of maturity and object to their return to Mexico), it shall craft new conditions and undertakings that are appropriate to protect the children from the grave risk of emotional harm on their immediate return to Mexico. In so doing, the court should not order any unauthorized or unenforceable conditions or undertakings and should consider alternative means to return the children to Mexico other than in Mother's custody should she decline to voluntarily return to Mexico with them. In the event appropriate conditions and undertakings cannot be crafted to protect the children from the grave risk of emotional harm from their Father on their immediate return to Mexico, the court may deny the petition.

16

## DISPOSITION

The Order is reversed and the matter is remanded for further proceedings in accordance with this opinion. Because we reverse the Order, our stay of that Order pending further order of this court automatically dissolves. Each party shall bear his or her own costs on appeal.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

17